# EXHIBIT "A"

**WORLD SAVINGS BANK, FSB**

# ADJUSTABLE RATE MORTGAGE NOTE

## PICK-A-PAYMENT LOAN

### GDW AVERAGE DEPOSIT ACCOUNT RATE (COST OF SAVINGS) INDEX

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE, MY MONTHLY PAYMENT AND MY UNPAID PRINCIPAL BALANCE. MY MONTHLY PAYMENT INCREASES, MY INTEREST RATE INCREASES AND MY PRINCIPAL BALANCE INCREASES ARE LIMITED. THIS NOTE IS SECURED BY A SECURITY INSTRUMENT OF THE SAME DATE.

LOAN NUMBER: █████████                          DATE: **November 4, 2005**

BORROWER(S):   JOHNNY PHAN, A MARRIED MAN   sometimes called "Borrower" and sometimes simply called "I" or "me."

PROPERTY ADDRESS: **10311 JENNRICH AVE, GARDEN GROVE, CA  92843-5003**

### 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. **$460,000.00** , called "Principal," plus interest, to the order of the Lender. The Lender is WORLD SAVINGS BANK, FSB, a FEDERAL SAVINGS BANK, ITS SUCCESSORS AND/OR ASSIGNEES, or anyone to whom this Note is transferred.

### 2. INTEREST

#### (A)   Interest Rate

Interest will be charged on unpaid Principal until the full amount of Principal has been paid. I will pay interest at the yearly rate of **5.770%**. The interest rate I will pay  may change as described in this Section 2. Interest will be charged on the basis of a twelve month year and a thirty day month.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 7(B) of this Note.

#### (B)   Interest Change Dates

The interest rate I will pay may change on the **15th** day of **December, 2005** and on the same day every month thereafter. Each date on which my interest rate could change is called an "Interest Change Date." The new rate of interest will become effective on each Interest Change Date.

#### (C)   Interest Rate Limit

My lifetime maximum interest rate limit is **11.950%**, called "Lifetime Rate Cap."



LENDER'S USE ONLY



**(D)  Index**

Beginning with the first Interest Change Date, my interest rate will be based on an "Index." The Index is the weighted average of the interest rates in effect as of the last day of each calendar month on the deposit accounts of the federally insured depository institution subsidiaries ("Subsidiaries") of Golden West Financial Corporation ("GDW"), as made available by GDW. Included in the deposit accounts for purposes of the Index calculation are all of the items and adjustments that GDW uses to calculate the line item currently called "cost of deposits" that appears in its quarterly and annual reports to shareholders as well as in other financial reports publicly distributed by GDW. The Index does not include deposit accounts owned by GDW or its Subsidiaries or other affiliates. The calculation of the Index includes adjustments for the effects of financial instruments related to the deposit accounts and other adjustments determined by GDW in its sole discretion as appropriate to accurately reflect the weighted average of interest rates on the deposit accounts. If an Index is substituted as described in Section 2(F) of this Note, the alternative index will become the Index. The most recent index figure available on each Interest Change Date is called the "Current Index."

**(E)  Calculation of Interest Rate Changes**

Lender will calculate my new interest rate by adding **2.800** percentage points, called the "Margin," to the Current Index. Subject to the limit stated in Section 2(C) above, the result of this calculation will be my new interest rate until the next Interest Change Date.

If Lender fails to utilize the entire interest rate increase to which it is entitled under this Note on any Interest Change Date by failing to add all or part of the allowable Margin to the Current Index, then Lender may add any such allowable Margin to the Current Index on any future Interest Change Date. Lender may not, at a later date, "carryover" or add interest to which it is not entitled under this Note on any Interest Change Date.

**(F)  Alternative Index**

The Lender may choose an alternative index to be the Index if the Index is no longer available. For purposes of this Section 2(F) the Index is not "available" if: (a) the Index is for any reason no longer published; or (b) the Lender, in its sole discretion, determines that the Index is calculated in a substantially different manner or based on substantially different information than at the time the Index became applicable to this Note; or (c) applicable laws or regulations prevent the Lender from using the Index to calculate interest under this Note. The selection of the alternative index shall be at Lender's sole discretion. The alternative index may be a national or regional index or another type of index approved by the Lender's primary regulator. The Lender will give me notice of the alternative index.

**3.  PAYMENTS**

**(A)  Time and Place of Payments**

I will pay Principal and interest by making payments every month.

I will make my monthly payments on the **15th** day of each month beginning on **December 15, 2005**. I will make these payments every month until I have paid (i) all the Principal and interest; and (ii) any other charges described below that I may owe under this Note; and (iii) any charges that may be due under the Security Instrument. If, on **November 15, 2035**, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at **1901 HARRISON STREET, OAKLAND, CALIFORNIA 94612** or at a different place if required by notice from the Lender.

**(B)  Amount of My Initial Monthly Payments**

Each of my initial monthly payments will be in the amount of U.S. **$ 1,746.63**. This amount will change as described in Sections 3(C) and 3(D) below. My initial monthly payment amount was selected by me from a range of initial payment amounts approved by Lender and may not be sufficient to pay the entire amount of interest accruing on the unpaid Principal balance.

**(C)  Payment Change Dates**

My monthly payment will change as required by Section 3(D) below beginning on the **15th** day of **December, 2006** and on that day every **12th** month thereafter. Each of these dates is called a "Payment Change Date." My monthly payment will also change at any time Section 3(F) or 3(G) below requires me to pay a different amount.

I will pay the amount of my new monthly payment each month beginning on each Payment Change Date and as provided in Section 3(F) or 3(G) below.

**(D)  Calculation of Payment Changes**

Subject to Sections 3(F) and 3(G), on the Payment Change Date my monthly payment may be changed to an amount sufficient to pay the unpaid principal balance, including any deferred interest as described in Section 3(E) below, by the Maturity Date. However, the amount by which my payment can be increased will not be more than 7-1/2% of the then existing Principal and interest payment. This 7-1/2% limitation is called the "Payment Cap." The Lender will perform this Payment Change calculation at least 60 but not more than 90 days before the Payment Change Date.

**(E)    Deferred Interest; Additions to My Unpaid Principal**

From time to time, my monthly payments may be insufficient to pay the total amount of monthly interest that is due. If this occurs, the amount of interest that is not paid each month, called "Deferred Interest," will be added to my Principal and will accrue interest at the same rate as the Principal.

**(F)    Limit on My Unpaid Principal; Increased Monthly Payment**

My unpaid principal balance can never exceed **125%** of the Principal I originally borrowed, called "Principal Balance Cap." If, as a result of the addition of deferred interest to my unpaid principal balance, the Principal Balance Cap limitation would be exceeded on the date that my monthly payment is due, I will instead pay a new monthly payment. Notwithstanding Sections 3(C) and 3(D) above, I will pay a new monthly payment which is equal to an amount that will be sufficient to repay my then unpaid principal balance in full on the Maturity Date at the interest rate then in effect, in substantially equal payments.

**(G)    Payment Cap Limitation; Exceptions**

Beginning with the **10th** Payment Change Date and every 5th Payment Change Date thereafter, my monthly payment will be calculated as described in Section 3(D) above except that the Payment Cap limitation will not apply. Additionally, the Payment Cap limitation will not apply on the final Payment Change Date.

**(H)    Notice of Payment Changes**

The Lender will deliver or mail to me a notice of any changes in the amount of my monthly payment, called "Payment Change Notice," before each Payment Change Date. The Payment Change Notice will include information required by law.

**4.    FAILURE TO MAKE ADJUSTMENTS**

If for any reason Lender fails to make an adjustment to the interest rate or payment amount as described in this Note, regardless of any notice requirement, I agree that Lender may, upon discovery of such failure, then make the adjustments as if they had been made on time. I also agree not to hold Lender responsible for any damages to me which may result from Lender's failure to make the adjustment and to let the Lender, at its option, apply any excess monies which I may have paid to partial prepayment of unpaid Principal.

**5.    BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due.  A payment of Principal before it is due is called a "Prepayment". When I make a Prepayment, I will tell the Lender in writing that I am doing so.  I may make a full Prepayment or partial Prepayment without paying any prepayment charge.  If I make a partial Prepayment, there will be no changes in the due dates or amounts of my payments unless the Lender agrees in writing to those changes. My partial Prepayment may reduce the amount of my payments after the first Payment Change Date following my partial Prepayment.

**6.    MAXIMUM LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Lender may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**7.    BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A)    Late Charges for Overdue Payments**

If the Lender has not received the full amount of any monthly payment by the end of **15** calendar days after the date it is due, I will pay a late charge to the Lender. The amount of the charge will be **5.00%** of my overdue payment of Principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B)   Default

I will be in default if (i) I do not pay the full amount of each monthly payment on the date it is due; or (ii) I fail to perform any of my promises or agreements under this Note or the Security Instrument; or (iii) any statement made in my application for this loan was materially false or misleading or if any statement in my application for this loan was materially false or misleading by reason of my omission of certain facts; or (iv) I have made any other statement to Lender in connection with this loan that is materially false or misleading.

### (C)   Notice of Default

If I am in default, the Lender may send me a written notice, called "Notice of Default," telling me that if I do not pay the overdue amount by a certain date, the Lender may require me to pay immediately the amount of Principal which has not been paid and all the interest that I owe on that amount, plus any other amounts due under the Security Instrument.

### (D)   No Waiver by Lender

Even if, at a time when I am in default, the Lender does not require me to pay immediately in full as described above, the Lender will still have the right to do so if I am in default at a later time.

### (E)   Payment of Lender's Costs and Expenses

The Lender will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses may include, for example, reasonable attorneys' fees and court costs.

### 8.   GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me or any Borrower at **10311 JENNRICH AVE, GARDEN GROVE, CA 92843–500**, or at a single alternative address if I give the Lender notice of my alternative address. I may give notice to Lender of a change in my address in writing or by calling Lender's customer service telephone number provided on my billing statement.  I may designate only one mailing address at a time for notification purposes.

Except as permitted above for changes of address, any notice that must be given to the Lender under this Note will be given by mailing it by first class mail to the Lender at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

### 9.   OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who takes over these obligations is also obligated to keep all of the promises made in this Note. The Lender may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

### 10.   WAIVERS

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Lender to demand payment of amounts due. "Notice of Dishonor" means the right to require the Lender to give notice to other persons that amounts due have not been paid.

### 11.   SECURED NOTE - ACCELERATION

In addition to the protections given to the Lender under this Note, the Security Instrument dated the same date as this Note gives the Lender security against which it may proceed if I do not keep the promises which I made in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note and includes the following Paragraph **26**:

**AGREEMENTS ABOUT LENDER'S RIGHTS IF THE PROPERTY IS SOLD OR TRANSFERRED**

**Acceleration of Payment of Sums Secured.** Lender may, at its option, require immediate payment in full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission. Lender also may, at its option, require immediate payment in full if Borrower is not a natural Person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission. However, Lender shall not require immediate payment in full if this is prohibited by Federal Law in effect on the date of the Security Instrument.

If Lender exercises the option to require immediate payment in full, Lender will give me notice of acceleration. If I fail to pay all Sums Secured by this Security Instrument immediately, Lender may then or thereafter invoke any remedies permitted by this Security Instrument without further notice to or demand on me.

**Exception to Acceleration of Payment of Sums Secured.** If the sale or transfer of all or any part of the Property, or of a beneficial interest in Borrower, if Borrower is not a natural Person, is the first one to occur after the date of this Security Instrument, Lender will not exercise the option to accelerate payment in full of all Sums Secured and the loan may be assumed if:

(i)    Lender receives a completed written application from transferee to evaluate the creditworthiness of transferee as if a new loan were being made to the transferee by Lender;

(ii)    Lender approves the creditworthiness of the transferee in writing;

(iii)    transferee makes a cash downpayment sufficient to meet Lender's then current underwriting standards;

(iv)    an assumption fee, in an amount to be determined by Lender (but not to exceed 1% of the balance of Principal and interest due under the Secured Notes at the time of sale or transfer of the Property or of the interest in the Borrower) is paid to Lender; and

(v)    the transferee executes an assumption agreement which is satisfactory to Lender.

The loan may be assumed under its then existing terms and conditions with one exception; the Lifetime Rate Cap may be changed. The Lifetime Rate Cap shall be changed to an interest rate which is the sum of the interest rate in effect on the date of a sale or transfer of the Property or beneficial interest in Borrower plus 5 percentage points, if that sum exceeds the Lifetime Rate Cap stated in the Secured Notes.

### 12.  GOVERNING LAW; SEVERABILITY

This Note shall be governed by and construed under federal law and federal rules and regulations including those for federally chartered savings institutions, called "Federal Law." In the event that any of the terms or provisions of this Note are interpreted or construed by a court of competent jurisdiction to be void, invalid or unenforceable, such decision shall affect only those provisions so construed or interpreted and shall not affect the remaining provisions of this Note.

### 13.  CLERICAL ERRORS

In the event the Lender at any time discovers that this Note or the Security Instrument or any other document related to this loan, called collectively the "Loan Documents," contains an error which was caused by a clerical mistake, calculation error, computer error, printing error or similar error, I agree, upon notice from the Lender, to reexecute any Loan Documents that are necessary to correct any such error(s) and I also agree that I will not hold the Lender responsible for any damage to me which may result from any such error.

### 14.  LOST, STOLEN OR MUTILATED DOCUMENTS

If any of the Loan Documents are lost, stolen, mutilated or destroyed and the Lender delivers to me an indemnification in my favor, signed by the Lender, then I will sign and deliver to the Lender a Loan Document identical in form and content which will have the effect of the original for all purposes.

THIS SPACE INTENTIONALLY LEFT BLANK; SIGNATURE PAGE FOLLOWS.

**SIGNATURE PAGE**

**WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED**

**(PLEASE SIGN YOUR NAME EXACTLY AS IT APPEARS BELOW)**

**BORROWER(S):**

_____   (Seal)

JOHNNY  PHAN

WITHOUT RECOURSE
PAY TO THE ORDER OF

WELLS FARGO BANK, N.A. SUCCESSOR BY MERGER
WITH WELLS FARGO BANK SOUTHWEST, N.A. F/K/A
WACHOVIA MORTGAGE, FSB F/K/A WORLD SAVINGS
BANK, FSB

BY _____

GEORGIANA M SIELENI
VICE PRESIDENT LOAN DOCUMENTATION

This Document was electronically recorded by
First American Cleveland

Recorded in Official Records, Orange County
Tom Daly, Clerk-Recorder

**RECORDING REQUESTED BY:**
WORLD SAVINGS BANK

54.00
2006000807269 11:10am 12/01/06
108 73 D11 17
0.00 0.00 0.00 0.00 48.00 0.00 0.00 0 00

When recorded mail to
*FIRST AMERICAN TITLE INSURANCE*
*LENDERS ADVANTAGE*
*1100 SUPERIOR AVENUE, SUITE 200*
*CLEVELAND, OHIO  44114*

**LOAN NUMBER:** ▮▮▮▮▮▮

FOR RECORDER'S USE ONLY

OPEN END DEED OF TRUST
(SECURING FUTURE ADVANCES)
THIS DEED OF TRUST IS SECURITY FOR AN EQUITY LINE OF CREDIT AGREEMENT AND
DISCLOSURE STATEMENT MATURING NO LATER THAN October 15, 2036.

---

**THIS DEED OF TRUST** (herein called the "Security Instrument") is made this **5th** day of
**October, 2006** , among the Trustor, **JOHNNY PHAN AND SILEELA THUNGTON, HUSBAND AND WIFE**

(herein "Borrower"), **Golden West Savings Association Service Co., A California Corporation**
(herein "Trustee"), and the Beneficiary, **WORLD SAVINGS BANK, FSB, a FEDERAL SAVINGS BANK,, ITS SUCCESSORS AND/OR ASSIGNEES**, whose address is   **1901 Harrison Street, Oakland, CA 94612**   (herein "Lender")

**PURSUANT TO** an Equity Line of Credit Agreement and Disclosure Statement dated **October 5, 2006** (herein "Note"), Borrower may incur maximum unpaid loan indebtedness (exclusive of interest thereon) in amounts fluctuating from time to time up to the maximum principal sum outstanding at any time of **THIRTY THOUSAND AND 00/100**
Dollars (U S  **$30,000.00**), which is due and payable, if not sooner
paid, no later than the 30th anniversary of the opening of the Equity
Line of Credit

**BORROWER, IN** consideration of the indebtedness herein recited and the trust herein created, irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the County of **ORANGE** State of **CALIFORNIA SEE EXHIBIT "A," ATTACHED HERETO AND INCORPORATED BY REFERENCE HEREIN,** which has the address of **10311 JENNRICH AVE, GARDEN GROVE, CA 92843-5003** ("Property Address")

**TOGETHER WITH** all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances, fixtures and rents (subject however to the rights and authorities given herein to Lender to collect and apply such rents), all of which shall be deemed to be and remain a part of the property covered by this Security Instrument and all of the foregoing, together with said property (or the leasehold estate if this Security Instrument is on a leasehold) are hereinafter referred to as the "Property";

**TO SECURE** to Lender (a) the repayment of all sums now or hereafter advanced under the terms of the Note (including, without limitation, such sums that are advanced by Lender whether or not at the time the sums are advanced there is any principal sum outstanding under the Note), with interest, and all renewals, extensions and modifications of the Note, (including, without limitation, any modifications that increase the Credit Limit of the Note), this subsection (a) being collectively included within the term "Note" in this Security Instrument, (b) the payment of all other sums, with interest, advanced under this Security Instrument to protect the security of this Security Instrument, and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note

**BORROWER COVENANTS** that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property, and that the Property is unencumbered except for encumbrances of record Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to encumbrances of record

**BORROWER AND LENDER COVENANT AND AGREE AS FOLLOWS:**

**1. Payment of Principal and Interest.** Borrower shall promptly pay when due the principal and interest indebtedness evidenced by the Note and all other charges due under this Security Instrument and due under the Note Payments due under the Note and this Security Instrument shall be made in U S Dollars by check or money order If any check or other instrument received by Lender as payment is returned to Lender unpaid, Lender may (a) charge Borrower the non-sufficient funds (NSF) fee specified in the Note or, if the Note does not specify any such fee amount, an amount not to exceed the maximum NSF charge permitted by applicable law, and (b) require that any or all subsequent payments be made by money order or with certified funds If Borrower is in default, Lender may require Borrower to make any payment needed to cure the default by money order or with certified funds "Certified funds" means a certified check, bank check, treasurer's check or cashier's check, drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 12 Lender may return any payment(s) or partial payment(s) if the payment(s) or partial payment(s) are insufficient to bring Borrower's obligations current Lender may accept any payment(s) or partial payment(s) insufficient to bring the Borrower's obligations current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment(s) or partial payment(s) in the future

**2. Funds for Escrow Items.** At loan origination or at any time thereafter, Lender may require that Borrower pay to Lender on the day periodic payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property, (b) leasehold payments or ground rents on the Property, if any, (c) premiums for any and all insurance required by Lender under Section 5, and (d) condominium or homeowners association dues, fees and assessments, if any. These items are called "Escrow Items." Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section 2 Any waiver by Lender of Borrower's obligation to pay Funds to Lender may only be in writing

When Borrower is not required to pay for Escrow Items by paying Funds to Lender, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require If Borrower is obligated to pay Escrow Items directly and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 7 and pay such amount and Borrower shall then be obligated under Section 7 to repay to Lender any such amount. Lender may require that Borrower then pay to Lender Funds for any or all Escrow Items by a notice given in accordance with Section 12, and Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 2

Lender may, at any time, collect and hold Funds in an amount (1) sufficient to permit Lender to apply the Funds at the time specified under the Real Estate Settlement Procedures Act (12 U S C 2601 et seq ) and its implementing regulation, Regulation X (24 C.F.R Part 3500), as they or any successor legislation or regulation might be amended from time to time ("RESPA") and (2) not to exceed the maximum amount a lender can require under RESPA Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge Unless an agreement is made in writing or applicable law requires Lender to pay interest on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than twelve monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than twelve monthly payments

Upon payment in full of all sums secured by this Security Instrument Lender shall promptly refund to Borrower any Funds held by Lender If under Section 17 hereof the Property is sold or the Property is otherwise acquired by Lender, Lender shall apply, no later than immediately prior to the sale of the Property or its acquisition by Lender, any Funds held by Lender at the time of application as a credit against the sums secured by this Security Instrument

**3. Application of Payments.** Unless the Note or applicable law requires otherwise, Lender will apply payments received under Sections 1 and 2 in the order selected by Lender.

**4. Prior Mortgages and Deeds of Trust; Charges; Liens.** Borrower shall perform all of Borrower's obligations under any mortgage, deed of trust or other security agreement with a lien which has priority over this Security Instrument, including Borrower's covenants to make payments when due Borrower shall pay or cause to be paid all taxes, assessments and other charges, fines and impositions attributable to the Property (including, without limitation, all dues, fees, assessments and other charges that are imposed on the Property by any applicable condominium association, homeowners association or similar organization), which may attain a priority over this Security Instrument, and leasehold payments or ground rents, if any

Borrower agrees that Borrower will not obtain any additional advances, whether voluntary or involuntary, or allow any modification or extension of any loan secured by a lien or other encumbrance with a priority senior to this Security Instrument without the prior written consent of Lender Violation of this provision shall constitute a default under this Security Instrument entitling Lender to all rights and remedies afforded herein, in law or equity, including but not limited to, acceleration of the loan

Borrower further agrees to deliver to Lender any notices that Borrower receives from the holder of any such senior lien or encumbrance.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this loan

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance This insurance shall be maintained in the amounts (including deductible levels) and for the

periods that Lender requires What Lender requires pursuant to the preceding sentences can change during the term of the loan The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably Lender may require Borrower to pay, in connection with this loan, a one-time charge for flood zone determination and certification and a one-time charge for tracking services Borrower also shall be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of flood zone determination resulting from an objection by Borrower

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense, pursuant to Section 7 below Lender is under no obligation to purchase any particular type or amount of coverage Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance coverage that Borrower could have obtained

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance Lender shall have the right to hold the policies and renewal certificates If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices If Borrower obtains any form of insurance coverage not otherwise required by Lender, such as credit life and/or disability insurance or earthquake or other hazard insurance for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee, and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance

If the Property is a unit in a condominium, cooperative or planned unit development (the "Project") and the Project is covered by a master or blanket policy maintained by the Project's owners association, in the event of a distribution of any hazard insurance proceeds, including without limitation any earthquake or special hazards insurance whether or not such coverage was specifically required by Lender, in lieu of restoration or repair following a loss to the Property and/or the Project, any proceeds payable to Borrower and/or Lender are hereby assigned and shall be paid to Lender for application to sums secured by this Security Instrument, with any excess paid to Borrower Borrower shall take such actions as may be reasonable to insure that the Project's owners association maintains a public liability insurance policy acceptable to Lender.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied first to reimburse Lender for costs and expenses incurred in connection with obtaining the proceeds, and then, at Lender's option and in the order and proportion as Lender may determine in its sole and absolute discretion regardless of any impairment or lack of

impairment of any security, as follows  (a) to the extent allowed by applicable law, to the sums secured by this Security Instrument in a manner that Lender determines and/or (b) to restoration or repair of the Property to a condition satisfactory to Lender, such application to be made in the manner and at the times as determined by Lender  During any repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly  Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed  Unless an agreement is made in writing or applicable law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds  Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters  If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim  The 30-day period will begin when the notice is given  In either event, or if Lender acquires the Property under Section 17 or otherwise, Borrower hereby assigns to Lender (1) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (2) any other of Borrower's rights (other than the right to any refund or unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property  Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due

If any insurance proceeds are used to reduce the amount of principal owing to Lender under the Note, that use will not delay the due date or change the amount of regularly scheduled payments under the Note, unless Lender and Borrower agree to such delay or change in writing

**6.  Preservation and Maintenance of Property; Assignment of Rights for Injury to Property.** Borrower shall keep the Property in good repair including, but not limited to, keeping the Property free from debris, mold, termites, dry rot and other damaging pests and infestations, not commit waste or permit impairment or deterioration of the Property, comply with the provisions of any lease if this Security Instrument is on a leasehold, and, if this Security Instrument is on a unit in a Project, (a) perform all of Borrower's obligations under the declaration or covenants creating or governing the Project, the by-laws and regulations of the Project, and constituent documents, and (b) pay when due all dues, fees, assessments and other charges that are imposed on Borrower or the Property by the condominium association, homeowners association or similar organization.

An **assignment** is a transfer of rights to another  Borrower may have rights to bring legal action against persons, other than Lender, for injury or damage to the Property or in connection with the loan made by Lender and which arose or will arise before or after the date of this Security Instrument. These rights to bring legal action may include an action for breach of contract, fraud,

concealment of a material fact or for intentional or negligent acts Borrower assigns these rights, and any proceeds arising from these rights, as permitted by applicable law, to Lender Lender may, at its option, enforce these rights in its own name and may apply any proceeds resulting from this assignment to sums secured by this Security Instrument after deducting any expenses, including attorneys' fees, incurred in enforcing these rights At the request of Lender, Borrower will sign any further assignments or other documents that may be necessary to enforce this assignment

**7. Protection of Lender's Security.** If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or if any action or proceeding is commenced which might materially affect Lender's interest in the Property (such as a legal proceeding in bankruptcy, in probate, for condemnation, or to enforce laws or ordinances), or if Borrower abandons the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument Lender's actions may include, without limitation, appearing in court, paying reasonable attorneys' fees, purchasing insurance required under Section 5 above (such insurance may cost more and provide less coverage than the insurance Borrower might purchase), and paying any sums secured by a lien which has priority over this Security Instrument Any amounts disbursed by Lender under this Section 7 shall become additional debt of Borrower secured by this Security Instrument These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment Nothing contained in this Section 7 shall require Lender to incur any expense or take any action hereunder

Lender also may charge Borrower fees for services performed in connection with Borrower's default for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, property inspection and valuation fees In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by applicable law

If Lender required mortgage insurance as a condition of making the loan, Borrower shall pay the premiums required to maintain such insurance in effect until such time as the requirement for such insurance terminates in accordance with Borrower's and Lender's written agreement or applicable law.

In the event Borrower is subject of a bankruptcy proceeding and delinquent amounts owing under the Note and/or this Security Agreement are to be paid according to a plan requiring approval of the bankruptcy court, Borrower agrees that such bankruptcy plan shall provide for interest on all delinquent amounts being paid through the plan (including, without limitation, principal, interest or periodic finance charges, fees and charges under the Note, and Lender advances, fees and charges under this Security Instrument) at the then current rate of interest provided in the Note

**8. Inspection.** Lender may make or cause to be made reasonable entries upon and inspections of the Property, provided that Lender shall give Borrower notice prior to any such inspection specifying reasonable cause for the inspection.

**9. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of the Property, or part thereof, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Security Instrument

**10. Borrower Not Released; Forbearance By Lender Not a Waiver; No Offset.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release, in any manner, the liability of the original Borrower and Borrower's successors in interest  Lender shall not be required to commence proceedings against such successor or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower and Borrower's successors in interest  Any forbearance by Lender in exercising any right or remedy hereunder, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy  No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**11. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements herein contained shall bind, and the rights hereunder shall inure to, the respective successors and assigns of Lender and Borrower, subject to the provisions of Section 16 hereof  All covenants and agreements of Borrower shall be joint and several. Any Borrower who co-signs this Security Instrument, but does not execute the Note, (a) is co-signing this Security Instrument only to grant and convey that Borrower's interest in the Property under the terms of this Security Instrument, (b) is not personally liable on the Note or under this Security Instrument, and (c) agrees that Lender and any other Borrower hereunder may agree to extend, modify, forbear, or make any other accommodations with regard to the terms of this Security Instrument or the Note, without that Borrower's consent and without releasing that Borrower or modifying this Security Instrument as to that Borrower's interest in the Property.

**12. Notice; Notice of Grievance.** Except for any notice required under applicable law to be given in another manner, (a) any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing such notice by first class mail addressed to Borrower at the Property Address or at such other single address as Borrower may designate by notice to Lender as provided herein, and (b) except as permitted below for changes of address, any notice to Lender shall be given by first class mail to Lender's address stated herein or to such other single address as Lender may designate by notice to Borrower as provided herein  Borrower may give notice to Lender of a change of Borrower's address in writing or by calling Lender's customer service telephone number provided on Borrower's billing statement  Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given in the manner designated herein.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party

(with such notice given in compliance with this Section 12) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action  If applicable law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable  The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 16 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 12.

**13. Governing Law; Severability; Loan Charges.** This Security Instrument shall be governed by federal law, rules, and regulations, including those for federally chartered savings institutions ("Federal Law") and, to the extent federal law does not apply, by the law of the jurisdiction in which the Property is located  In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision, and to this end the provisions of this Security Instrument and the Note are declared to be severable  As used herein, "costs", "expenses" and "attorneys' fees" include all sums to the extent not prohibited by applicable law or limited herein.

If a law which sets maximum loan charges is finally interpreted so that such law is applicable to Lender and that the interest or other loan charges collected or to be collected in connection with the Note or the Security Instrument exceed the permitted limits, then  (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit, and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower  If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**14. Borrower's Copy; Modification; Clerical Errors; Replacement Documents.** Borrower shall be furnished a conformed copy of the Note and of this Security Instrument at the time of execution or after recordation hereof  The Note and/or this Security Instrument may be modified or amended only by an agreement in writing signed by Borrower and Lender. In the event Lender at any time discovers that the Note and/or this Security Instrument contains an error caused by a clerical mistake or calculation, computer, printing or similar error, Borrower agrees to reexecute the document(s) containing the error and to hold Lender harmless for any such error  If any document evidencing this loan is lost, stolen, mutilated or destroyed, and Lender delivers a signed indemnification in Borrower's favor, then Borrower agrees to sign and deliver to Lender a replacement document identical in form and content which will have the effect of the original for all purposes.

**15. Borrower's Loan Application.** Borrower shall be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note

Lender extended Borrower this loan in reliance upon Borrower's representation in the loan application that Borrower intends to occupy the Property as Borrower's principal residence  Lender may have provided Borrower more favorable loan terms, such as a lower interest rate in the Note or a higher loan-to-value, than otherwise would have been made available in the absence of Borrower's representation. Borrower agrees to occupy, establish and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument and to continue to occupy the Property as Borrower's principal residence for at least one year thereafter, unless extenuating circumstances exist which are beyond Borrower's control

**16. Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred), Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument  If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower

**17. Acceleration; Remedies.** Borrower will be in default if (a) the full minimum payment due under the Note, or any other payment required by the Note or this Security Instrument, is not made when it is due, (b) Borrower has engaged in fraud or made a material misrepresentation at any time in connection with the equity account evidenced by the Note, (c) Borrower takes any action or fails to take any action that adversely affects the Property or Lender's rights in the Property  If a default occurs (other than under Section 16 unless otherwise required by applicable law), Lender shall give notice to Borrower prior to acceleration  The notice shall specify: (1) the default, (2) the action required to cure such default, (3) a date, not less than 10 days from the date the notice is mailed to Borrower, by which such default must be cured, and (4) that failure to cure such default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property  The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the nonexistence of a default or any other defense of Borrower to acceleration and sale  If the default is not cured on or before the date specified in the notice, Lender, at Lender's option, may declare all of the sums secured by this Security Instrument to be immediately due and payable without further demand and may invoke the power of sale and any other remedies permitted by applicable law  Lender shall be entitled to collect all reasonable costs and expenses incurred in pursuing the remedies provided in this Section 17, including, but not limited to, reasonable attorneys' fees and costs of title evidence

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold and shall cause such notice to be recorded in each county in which the Property or some part thereof is located  Lender or Trustee shall mail copies of such notice in the manner prescribed by applicable law. Trustee shall give public notice of sale to the persons and in the manner prescribed by applicable law. After the lapse of such time as may be required by applicable law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in such order as Trustee may determine  Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale  Lender or Lender's designee may purchase the Property at any sale

Trustee shall deliver to the purchaser Trustee's deed conveying the Property so sold without any covenant or warranty, expressed or implied  The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein  Trustee shall apply the proceeds of the sale in the following order  (a) to all reasonable costs and expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees and costs of title evidence, (b) to all sums secured by this Security Instrument, and (c) the excess, if any, to the person or persons legally entitled thereto

**18. Borrower's Right to Reinstate.** Notwithstanding Lender's acceleration of the sums secured by this Security Instrument due to Borrower's breach, Borrower shall have the right to have any proceedings begun by Lender to enforce this Security Instrument discontinued at any time prior to five days before sale of the Property pursuant to the power of sale contained in this Security Instrument or at any time prior to entry of a judgment enforcing this Security Instrument if  (a) Borrower pays Lender all sums which would be then due under this Security Instrument and the Note had no acceleration occurred, (b) Borrower cures all breaches of any other covenants or agreements of Borrower contained in this Security Instrument, (c) Borrower pays all reasonable expenses incurred by Lender and Trustee in enforcing the covenants and agreements of Borrower contained in this Security Instrument, and in enforcing Lender's and Trustee's remedies as provided in Section 17 hereof, including, but not limited to, reasonable attorneys' fees, and (d) Borrower takes such action as Lender may reasonably require to assure that the lien of this Security Instrument, Lender's interest in the Property and Borrower's obligation to pay the sums secured by this Security Instrument shall continue unimpaired  Upon such payment and cure by Borrower, this Security Instrument and the obligations secured hereby shall remain in full force and effect as if no acceleration had occurred  However, the right to reinstate shall not apply in the case of acceleration under Section 16

**19. Assignment of Rents; Appointment of Receiver; Lender in Possession.** As additional security hereunder, and to the extent permitted by applicable law, Borrower hereby assigns to Lender the rents of the Property, provided that Borrower shall, prior to acceleration under Section 17 hereof or abandonment of the Property, have the right to collect and retain such rents as they become due and payable

Upon acceleration under Section 17 hereof or abandonment of the Property, Lender, in person, by agent or by judicially appointed receiver shall be entitled to enter upon, take possession of and manage the Property and to collect the rents of the Property, including those past due  All rents collected by Lender or the receiver shall be applied first to payment of the costs of management of the Property and collection of rents, including, but not limited to, receiver's fees, maintenance and repairs of the Property, premiums on receiver's bonds and reasonable attorneys' fees, and then to the sums secured by this Security Instrument  Lender and the receiver shall be liable to account only for those rents actually received

**20. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee  Trustee shall reconvey the Property without warranty to Borrower or other person(s) legally entitled to it  Borrower or such other person(s) will pay all recordation costs  Lender also may charge Borrower or such other person(s) a **fee of $65.00** for reconveying the Property, but only if the fee is paid to a third party (including the Trustee) for services rendered and the charging of the fee is permitted, whether expressly or by lack of express prohibition, under applicable law  If the fee charged does not exceed any maximum fee set by applicable law, the fee is conclusively presumed to be reasonable

**21. Substitute Trustee.** Lender, at Lender's option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county where the Property is located  The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Instrument is recorded and the name and address of the successor trustee  The successor trustee shall, without conveyance of the Property, succeed to all the title, powers and duties conferred upon the Trustee herein and by applicable law  This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution

**22. Statement of Obligations.** Lender may collect a fee of $60 00 for furnishing a statement of obligation, payoff demand statement, or any similar statement  Lender will deliver such statement by first class mail  If Lender is requested by Borrower or Borrower's agent to deliver such statement by facsimile transmission, Lender may collect a special handling charge of $10 for each such delivery and need not send a copy of such statement by first class mail

**23. ( x )  Quick Qualifying Loan.** Borrower applied for this loan under Lender's "Quick Qualifying" loan program. Borrower acknowledges that Lender relied upon certain statements of fact made by Borrower in approving the loan without requiring full documentation from Borrower and certain information verifications from third parties, enabling Borrower to obtain this loan rapidly. These statements included, but are not limited to, Borrower's certification that (a) except for any loan made by Lender concurrently with this loan, Borrower has no other "Quick Qualifying" loan with Lender, and (b) there are no undisclosed financial arrangements circumventing the terms of this loan transaction, including, but not limited to, unauthorized secondary financing, sales price adjustments, equity exchanges, credits to down payments or payments made outside escrow, or illusory transfers of title. Borrower agrees that Lender may deem Borrower to be in material breach of this section if any secondary financing is obtained, or an escrow is opened, on the Property within six months of the date of this Security Instrument. Borrower shall be in default if any material statements of fact or any of the above certifications were false or misleading, or if Borrower is in material breach of this Section

Notwithstanding anything to the contrary in the Note or this Security Instrument, in the event of Borrower's default under this Section, Lender, at its option, may (1) accelerate the loan in accordance with Section 16 without Borrower having the right of reinstatement under Section 18, or (2) increase the applicable interest rate under the Note by two percentage points (2.00%) for the remaining term of the Note (but not to exceed any lifetime interest rate cap or any maximum rate allowed by applicable law) and make corresponding changes to Borrower's periodic payment amount in order to amortize the loan according to the Note.

**24. (    )  Affordable Housing Program.** The obligation evidenced by the Note is the repayment of down payment and/or closing cost assistance provided to Borrower through a Federal Home Loan Bank's Affordable Housing Program. Notwithstanding anything to the contrary in this Security Instrument, this Security Instrument may be subordinate to more than one instrument and interest does not accrue on down payment and/or closing cost assistance amounts  In the event of any conflict between the provisions of the Note and this Security Instrument, the Note provision shall prevail

**( X )  VALUE INDICATES THAT THE PARAGRAPH APPLIES.**

**THIS SPACE INTENTIONALLY LEFT BLANK; SIGNATURE PAGE FOLLOWS.**

IN WITNESS WHEREOF, Borrower has executed this Security Instrument.

### (PLEASE SIGN YOUR NAME EXACTLY AS IT APPEARS BELOW)

### BORROWER(S):

_____  (Seal)
JOHNNY PHAN

_____  (Seal)
SILEELA THUNGTON

### ATTACH INDIVIDUAL NOTARY ACKNOWLEDGEMENT

# ACKNOWLEDGMENT

State of California
County of _Orange_

On _10-6-2006_ before me, _Juan Fernandez, notary public_
(here insert name and title of the officer)

personally appeared _Johnny Phan_

_____

_____

~~personally known to me~~ (or proved to me on the basis of satisfactory evidence) to be
the person(s) whose name(s) is/are subscribed to the within instrument and
acknowledged to me that he/she/they executed the same in his/her/their authorized
capacity(ies), and that by his/her/their signature(s) on the instrument the person(s),
or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature _Juan F_
_Juan Fernandez_

JUAN FERNANDEZ
Commission # 1608987
Notary Public - California
Los Angeles County
My Comm. Expires Sep 24, 2009

(Seal)

**ALL PURPOSE ACKNOWLEDGMENT**

STATE OF _____    Kingdom of Thailand
Bangkok Metropolis
COUNTY OF _____    Embassy of the United States
of America

                                                    Tack Lim
                                                    Vice Consul of the
2 4 OCT 2006                                         United States of America
On _____, _____ 2006 before me, _____

personally appeared   * Sileela THungton *  . Personally

known to me (or proved to me on the basis of satisfactory evidence) to be the person(s)
whose name(s) is/are subscribed to the within instrument and acknowledged to me that
he/she/they executed the same in his/her/their authorized capacity(ies), an that by
his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of
which the person(s) acted, executed the instrument.

**WITNESS my hand and official seal.**

Signature _____    (Stamp/Seal)

            Tack Lim
            Vice Consul of the          Indefinite
            United States of America

**ATTENTION NOTARY: Although the information requested below is
OPTIONAL, it could prevent fraudulent
attachment of this certificate to another
document.**

Title of Document Type _____ dated _____ , 2006_

# EXHIBIT "A"

## LEGAL DESCRIPTION

A PARCEL OF LAND SITUATED IN THE STATE OF CALIFORNIA, COUNTY OF
ORANGE, WITH A STREET LOCATION ADDRESS OF 10311 JENNRICH AVE;
GARDEN GROVE, CA 92843-5003 CURRENTLY OWNED BY JOHNNY PHAN AND
SILEELA THUNGTON HAVING A TAX IDENTIFICATION NUMBER OF 099-402-06
AND FURTHER DESCRIBED AS N TR 3214 LOT 38 .


10311 JENNRICH AVE; GARDEN GROVE, CA 92843-5003

# DOCUMENT MANAGEMENT
## SDI IMAGING COVERSHEET

**Capital Markets**

**P1**

**E-Prepare**

Mail to: Single Doc Imaging
MAC X9999-018
2701 Wells Fargo Way
Minneapolis, MN 55467-8000

| | |
|---|---|
| Your name: | Olena Lerwick |
| Chk Creator: | |
| Reviewed by: | |
| MAC#: | N9289-018 |
| Department: | Loan Sales Assignments |
| State | CA |
| County | Orange |
| Last Name | PHAN |
| Date: | 2/8/19 11:29 AM |

OPTION 1

**INDEX ALL FOLLOWING PAGES USING STANDARD INDEXING RULES**

(Please ensure there is a **circled Wells Fargo loan number on the first page** of each document.)

OPTION 2

☒ **INDEX ALL FOLLOWING PAGES TO THIS DOC TYPE & LOAN #:**

**Client** 708

Doc Type: DROPDOWN  (Recorded) 00600
Assignment

Loan Number:

Barcode:

☐ **Legal Description Included?**

Mail To
Attorney:

Recorded in Official Records, Orange County
Hugh Nguyen, Clerk-Recorder

87.00

2019000056780 8:22 am 02/25/19

65 411 A32   2

0.00 0.00 0.00 3.00 0.00 0.000.0075.00 3.00

Recording Requested By:
WELLS FARGO BANK, N.A.

When Recorded Return To:

ASSIGNMENT TEAM
WELLS FARGO BANK, N.A.
1000 BLUE GENTIAN RD #200
MAC: N9289-018
EAGAN, MN 55121-4400

**CORRECTIVE CORPORATE ASSIGNMENT OF DEED OF TRUST**

Orange, California
"PHAN"

PREPARED BY: WELLS FARGO BANK, N.A.

For Value Received, WELLS FARGO BANK, N.A., S/B/M TO WELLS FARGO BANK SOUTHWEST, N.A., F/K/A
WACHOVIA MORTGAGE, FSB, F/K/A WORLD SAVINGS BANK, FSB hereby grants, assigns and transfers to U.S.
BANK NATIONAL ASSOCIATION, NOT INDIVIDUALLY BUT SOLELY AS TRUSTEE FOR BLUEWATER
INVESTMENT TRUST 2018-1 at 2121 ROSECRANS AVE, EL SEGUNDO, CA 90245 all its interest under that
certain Deed of Trust dated 11/04/2005, in the amount of $460,000.00, executed by JOHNNY PHAN AND SILEELA
THUNGTON, HUSBAND AND WIFE AS JOINT TENANTS to WORLD SAVINGS BANK, FSB and Recorded:
11/29/2005  as Instrument No.: 2005000953259 in the County of Orange, State of California.

*THIS ASSIGNMENT IS BEING RECORDED TO CORRECT THE SCRIVENERS ERROR IN THE CORPORATE
ASSIGNMENT OF MORTGAGE RECORDED 08/15/2018 AS INSTRUMENT NUMBER 2018000297193, AS THAT
ASSIGNMENT LISTED THE ASSIGNEE AS U.S. BANK TRUST NATIONAL ASSOCIATION, AS TRUSTEE FOR
BLUEWATER INVESTMENT TRUST 2018-1, AND SHOULD HAVE LISTED THE ASSIGNEE AS U.S. BANK
NATIONAL ASSOCIATION, NOT INDIVIDUALLY BUT SOLELY AS TRUSTEE FOR BLUEWATER INVESTMENT
TRUST 2018-1.

In witness whereof this instrument is executed.

WELLS FARGO BANK, N.A., S/B/M TO WELLS FARGO BANK SOUTHWEST, N.A., F/K/A WACHOVIA
MORTGAGE FSB, F/K/A WORLD SAVINGS BANK, FSB
On

Xee Vong
Vice President Loan Documentation

eRecord

CORPORATE ASSIGNMENT OF DEED OF TRUST Page 2 of 2

STATE OF Minnesota
COUNTY OF Dakota

On 2/8/11 , before me, _____ Mary E Mathewson _____ , a Notary Public in the State of
Minnesota, personally appeared _____ Xee Vang _____ Vice President Loan Documentation of
WELLS FARGO BANK, N.A., S/B/M TO WELLS FARGO BANK SOUTHWEST, N.A., F/K/A WACHOVIA
MORTGAGE, FSB, F/K/A WORLD SAVINGS BANK, FSB, personally known to me (or proved to me on the basis of
satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and
acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by
his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted,
executed the instrument.

WITNESS my hand and official seal,

_____
Mary E Mathewson
Notary Expires: 1/31 2022

MARY E MATHEWSON
NOTARY PUBLIC - MINNESOTA
MY COMMISSION EXPIRES 01/31/2022

(This area for notarial seal)

eRecord

## MODIFICATION AGREEMENT

### A. First Mortgage Modification Agreement

| | |
|---|---|
| Date of this Agreement: | March 19, 2010 |
| Note known as Loan Number: | |
| Property Address. | 10311 JENNRICH AVE |
| | GARDEN GROVE, CA 92843-5003 |
| Return Date: | March 29, 2010 |

This Modification Agreement ("Agreement") is made as of the date above between the undersigned ("Borrower"), as obligor(s) on the Loan described above or as title holder(s) to the Property, as the context may require, and Wells Fargo Bank, N A. ("Lender"). Borrower agrees that, except as expressly modified in this Agreement, the Note and the Security Instrument remain in full force and effect and are valid, binding obligations upon Borrower, except as discharged in Bankruptcy, and are properly secured by the Property.

Unless this Agreement is executed without alteration and returned by the Return Date above this Agreement will be of no force or effect and the Loan will remain subject to all existing terms and conditions provided in the Note and Security Instrument. This Agreement will only be deemed received when actually received by Lender at: Wachovia Mortgage, Loan Modifications, T7416-010, PO Box 659558, San Antonio, Texas, 78265-9558.

1. If outstanding and owed as of the Date of this Agreement, Lender agrees to:
a. Waive all outstanding Late Charge and Return Check Fees on the Loan; and
b. Add amounts owed for "Escrow Amounts Advanced," "Foreclosure Fees," "Attorney's Fees," and "Property Inspection Fees" to the Loan balance.

2. Lender and Borrower further agree to modify the Loan as follows:
a. Forgive accrued, outstanding, and not capitalized interest through April 14, 2010
b. The balance owed on the Loan will be $ 380,131.75
c. The maturity date of the Loan is April 15, 2050
d. The <u>Interest Only</u> payment(s) on the Loan will be as follows:

| Payment Due Date | Payment (Interest Only) | Interest Rate | Interest Rate Eff. Date |
|---|---|---|---|
| 05/15/2010 | $ 1,056.45 | 3.335% | 04/15/2010 |
| 05/15/2011 | $ 1,175.25 | 3.710% | 04/15/2011 |
| 05/15/2012 | $ 1,294.04 | 4.085% | 04/15/2012 |
| 05/15/2013 | $ 1,412.83 | 4.460% | 04/15/2013 |
| 05/15/2014 | $ 1,531.62 | 4.835% | 04/15/2014 |
| 05/15/2015 | $ 1,650.41 | 5.210% | 04/15/2015 |

e. <u>Principal and Interest</u> Payment for the remaining term of the Loan:

| | | | |
|---|---|---|---|
| 05/15/2016 | $ 2,157.37 | 5.885% | 04/15/2016 |

Monthly payments will be due on the same day of each month. Each Interest Rate will go into effect on the corresponding Interest Rate Effective Date. **The payments above DO NOT**

**include amounts necessary for escrow.** Each Payment under 2(d) is an <u>interest only payment</u> calculated at the interest rate specified. The payment under 2(e) is the <u>principal and interest payment</u> for the remainder of the term calculated at the interest rate specified.

3. The Interest Change Dates, Calculation of Interest Rate Changes, Payment Change Dates, Calculation of Payment Changes, Index and Payment Cap Limitation no longer apply. The Loan may not be assumed by any other person or entity.

4. If a biweekly loan, the Loan will convert to a monthly payment schedule. References to "biweekly," "every two weeks," and "every other Monday" shall be read as "monthly," except as it relates to the Modified Maturity Date   Interest will be charged on a 360-day year, divided into twelve (12) segments. Interest charged at all other times will be computed by multiplying the unpaid principal by the interest rate, dividing the result by 365, and then multiplying that daily interest amount by the actual number of days for which interest is then due. <u>As part of the conversion from biweekly to monthly payments, any automatic withdrawal of payments (auto drafting) in effect with Lender for the Loan are cancelled.</u>

## B. Equity Line of Credit Modification Agreement

Date of this Agreement:                                      March 19, 2010
Equity Line of Credit obligation is known as Loan Number:
Property Address: 10311 JENNRICH AVE
                  GARDEN GROVE, CA 92843-5003

Return Date:                                                 March 29, 2010

This Equity Line of Credit Modification Agreement ("ELOC Modification") is made as of the date above between the undersigned ("Borrower"), as obligor(s) on the Equity Line of Credit obligation described above (ELOC) or as title holder(s) to the Property, as the context may require, and Wells Fargo Bank, N.A. ("Lender"). Borrower agrees that, except as expressly modified in this ELOC Modification, the Equity Line of Credit Agreement and Disclosure Statement and the Security Instrument remain in full force and effect and are valid, binding obligations upon Borrower, except as discharged in Bankruptcy, and are secured by the Property.

Lender and Borrower agree as follows:
1. If owed as of the date of this ELOC Modification, Lender agrees to waive ELOC Specific fees, Late Charge fees and Return Check fees on the Loan. In addition, Lender agrees to add amounts owed, as of the date of this agreement, for "Escrow Advances," "Foreclosure Fees," "Attorney's Fees," and "Property Inspection Fees" to the ELOC balance.
2. Forgive accrued, outstanding, and not capitalized interest through      April 19, 2010
3. The balance owed on the ELOC will be                                    $ 24,600.00
4. The Credit Limit on the ELOC for the remaining term will be            $ 24,600.00
5. The Interest Rate during the Advance Period will be fixed at                 3.657%
6. The Interest Rate during the Repayment Period will be fixed at               3.657%
7. Your first payment under this ELOC Modification will be due on       June 15, 2010

Payments will continue to be calculated according to the terms of the Note, but will be calculated at the fixed interest rate for each period stated above.

If the ELOC is frozen and/or terminated, the ELOC will remain frozen and/or terminated after this modification until the condition warranting the freeze and/or termination is remedied AND a reconsideration has been requested by Borrower in writing

**C.    Borrower's Agreement to this Modification Agreement, which includes a First Mortgage Modification Agreement and an Equity Line of Credit Modification Agreement**

Lender acknowledges that one or more of the undersigned may have filed for bankruptcy or may have received a discharge in a bankruptcy proceeding. Said individual(s) acknowledge and agree that this Agreement is not a reaffirmation agreement as defined in 11 U.S.C. §524, that any references in this Agreement that imply liability under the Note obligation instead refer to the amounts secured by the property and is not meant to impart personal liability on such individual(s), and that this Agreement and communications related to this Agreement are not attempts to collect, assess or recover a claim against the individual(s) that arose before the commencement of the bankruptcy or that has been discharged.

Borrower agrees that (a) Borrower has read this Modification Agreement in its entirety; (b) Borrower has consulted, or had opportunity to consult, with an attorney of Borrower's choosing; (c) The ELOC Modification provides the required advance notice of the terms changed by this ELOC Modification; and (d) Borrower has voluntarily entered into and agrees with the terms in this Modification Agreement, which includes a First Mortgage Modification Agreement and an Equity Line of Credit Modification Agreement.

BORROWER(S):

_____
JOHNNY PHAN

Wells Fargo Bank, N A

_____
Mary C. Reeder
Senior Vice President